WESTINGHOUSE et al. v. NEW YORK AIR BRAKE CO. et al.

(Circuit Court, S. D. New York. May 7, 1902.)

**1. Patents—Infringement—Profits and Damages Recoverable.**

Profits and damages recoverable for infringement of a patent must be limited to those directly and naturally arising from the invasion of complainant's monopoly, and cannot be enhanced by the fact that the use of the infringing device as one element of a combination enabled defendant to sell the entire combination, which was not covered by the patent.[1]

**2. Same.**

Defendant built and sold air brake equipments for railroad cars, in which it used a valve infringing a patent owned by complainant, which covered the valve alone. The equipment consisted of a combination of devices, some of which were covered by other patents. Held, that the profits and damages recoverable by complainant must be limited to those arising from the sale by defendant of the valves alone, and could not include the profits made by defendant from the sale of the entire equipments, nor the damages caused complainant by the loss of profits which it would have made from the sales of such equipments, although it was found that, but for the use of the infringing valve, defendant's equipments would not have been salable.

In Equity. Suit for infringement of patent. On exceptions to master's report.

Frederick H. Betts, for plaintiffs.

Charles Neave and William A. Jenner, for defendants.

WHEELER, District Judge. This cause has now been heard on exceptions to the master's report of profits and damages pursuant to a decree of this court (59 Fed. 581, affirmed by the circuit court of appeals, 11 C. C. A. 528, 63 Fed. 962) sustaining claims 1, 2, and 3 of patent No. 376,837, dated January 24, 1888, and granted to Westinghouse for an emergency valve improvement in fluid-pressure automatic brake mechanism used for railroad trains. The systems of which this improvement forms a small, but very important, part consist of many other parts, some of which are covered by patents and others are not. A motion has been made to amend the proceedings to set forth that another patent on another of the devices has been adjudged invalid; but that does not seem to be material, for what is not covered by these claims of the patent in suit is either free, or the subject of liability elsewhere; and whether it is free or subject to such liability elsewhere can make no proper difference as to the amount recoverable here. This necessarily stands by itself as to all else. The motion is therefore denied.

The master reports that:

"Transportation demanded long freight trains controlled by automatic pressure brakes and operated at the will of the man in charge of the locomotive. Practical railroad operation required that when the engineer set the brakes it should be done throughout the whole length of the train with reasonable uniformity as to time. Before the invention of the valve in suit it had not been possible to satisfy the master car builders that any

---

[1] Accounting by infringer of patent for profits, see note to Brickill v. Mayor, etc., 50 C. C. A. 8.

braking system met these demands. * * * The judgment of those master car builders influenced the market. They were practical, experienced, and interested men, whose verdict upon practicability and feasibility of any device of this nature would be regarded in the car building and operating world as wholly reliable. What they approved would be saleable; what they rejected would be unsaleable. * * * The result was the patent in suit. It met the requirements of the master car builders so fully that, as the proofs show, there was no demand in the market for any system that did not include this special mechanism. * * * I am compelled by the proofs to invest the patented valve during the period of the accounting with the attribute of wholly controlling the market of railroad braking systems, and to find and report that, but for the infringement in question, the defendant company would have found no market for the various accompaniments in car-braking equipments which it caused to be sold, amounting, with the triple valves, to the sum of $679,054.96. In other words, the unison of the infringed triple valve with the other articles found and supplied the market, and the manufacture of such other articles would have been an absolute loss but for the infringement."

He finds the expense of manufacture and sale of the 18,107 car equipments containing this valve to have been $575,257.35, which, deducted from the amount of sales, leaves a profit of $103,797.61, which, after deducting a bad debt of $54,264, leaves a net profit of $49,533.61.

As to damages he reports that:

"The dominating character of the patented device upon which the foregoing findings as to profits have been predicated is of equal importance and value upon the question of damages. It is decisive of this question also, and determines the elements and factors that must enter into the assessment. As matters of fact, therefore, I find that the complainant was prepared to meet and supply the demand for car equipments in braking apparatus which included the quick-action triple valve involved in this suit; that the demand was for an equipment that included the triple valve; that there was practically no demand for single and independent valves, and its marketability was in association with the requisite accessories to make up a full car equipment; that the defendant was able to supply a portion of the demand only by reason of the infringement, coupled with the fact of a lower selling price. I further find as questions of fact that the selling price of complainant's equipment for passenger cars including the patented device was $95, and that the cost of manufacture and sale was $34.50, which left a net profit on each of such equipments of $60.50; that the selling price of each freight-car equipment including the patented device was $39, and that the cost of manufacture and sale was $28.75, which left a net profit of $10.25 on each such equipment. As matter of fact I further find that the presence in the market of the defendant as a competitor deprived the complainant of the foregoing profits, respectively, on each sale made by the defendant. From these findings of fact it logically follows that, applied to the findings previously made as to the extent of defendants' business, the assessment of damages must be as follows:

177 passenger equipments at $60.50......................... $ 10,708 50
17,930 freight equipments at $10.25......................... 183,782 50

Total damages ......................................... $194,491 00

"But it appears from the proofs that fifty freight-car equipments were purchased by the complaining company for test and equipment. It is evident that a sale of this character did not displace an equal number of such equipments in the market manufactured by the complaining company, and therefore damages at the ascertained rate of $10.25 upon that amount of equipment were not sustained. From the foregoing amount of damages the sum of $512.50 should be deducted, which leaves the sum of $193,978.50 as the actual assessable damages."

The principal question now made is raised by the defendants' first and eleventh exceptions, which are directed against the allowance of profits and damages upon the complete car equipments, instead of upon the patented device only. It is whether the plaintiffs are, upon the facts reported, entitled to recover profits and damages substantially as if these claims of the patent covered the whole air brake equipment, or the damages from the sales of complete equipments are such a direct consequence of the infringement of these claims as to be recoverable therefor to their full extent. Perhaps the patent might have covered the whole equipment on which the profits and damages are found as a new combination with this emergency valve; but, if so, it did not. It was granted only for this one device. It cannot now be made to cover more than comes within its bounds. These great damages are said to follow from the infringement by the use of this device through the loss of sales the plaintiffs would have made of whole equipments but for the infringement, because no one would buy any equipments without the device, and no one could sell equipments with the device without infringing. But no one would buy the device without the rest of the equipment any more than the rest of the equipment without the device; and, if any one should, the damages would be the loss of profits on the device sold, and not the loss of profits on the equipment not sold. The question is not whether the defendants should have been enjoined from selling the device in any manner, but what, having sold it, are the damages flowing naturally from the infringement of these claims of this patent only by the sale of that which is the only infringement in question. The loss of the profits on the sales of the rest of the equipments seems, on the findings of fact reported, to follow from the attitude of the master car builders, and from trade conditions and relations, rather than from this single infringement of this patent. These advantages are not monopolies afforded or conferred by the patent which protects the patented device only, and furnishes grounds for the recovery of profits and damages for the use or sale of that. The sales of the rest of the equipment are new causes of damages that came in and brought about a large and principal part of those found and reported. They seem to be too indirect, and too remote from the patent. Only such damages as follow the wrongful act raising the liability, without any new cause intervening to produce them, are understood to be recoverable. According to these views, these exceptions must be sustained, and as the plaintiffs must show the distinct profits and damages of the infringement in order to recover them, but have not done so, a decree for nominal profits and damages only can now properly be entered.

The master reports that "it is possible to compute the profit made by the defendants upon each separate valve." The report will, of course, be recommitted for such computation, if the plaintiffs so desire.

First and eleventh exceptions sustained.